

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**PETER C. MCKITTRICK**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

**DIANE K. BRIDGE**
LAW CLERK

**TONIA McCOMBS**
LAW CLERK

April 1, 2015

Craig J. Melton
58014 S. Bachelor Flat Road
Warren, OR 97053

James L. and Laura L. Moore
1360 West Street
St. Helens, OR 97051

    Re:    <u>In re James L. Moore and Laura L. Moore</u>, Case No. 14-34533-elp7
             <u>Melton v. Moore</u>, Adv. No. 14-3261-pcm

Dear Parties:

       The purpose of this letter is to rule on the complaint filed by Craig J. Melton ("Plaintiff") against James and Laura Moore ("Debtors") to determine the dischargeability of a debt owed by Debtors to Plaintiff. A trial was held on March 18, 2015. After considering all of the arguments and evidence, I find that the debt is dischargeable and will enter judgment for Debtors.

       This letter contains the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

Background and Facts

       In December of 2007, Debtors rented property located in St. Helens, Oregon (the "Property") owned by Plaintiff. Exhibit 1. Debtors lived at the Property for approximately five and one-half years. Debtors vacated the property in August of 2013.

       In January of 2014, Plaintiff filed a Claim and Notice of Claim (the "Small Claims Complaint") against Debtors in the Small Claims Department of the Columbia County Circuit Court. Exhibit 2. Plaintiff alleged in the Small Claims Complaint that Debtors owed him $6,535.03 for "damage to rental property." <u>Id</u>. Debtors did not make an appearance in the small claims action and Plaintiff ultimately obtained a default Small Claims Judgment and Money

Award (the "Default Judgment") against Debtors in the total amount of $6,766.03 ($6,535.03 + $131 costs and expenses + $100 prevailing party fee). Exhibit 3.

Debtors filed a chapter 7 bankruptcy petition on August 7, 2014. Plaintiff timely filed this adversary proceeding seeking a determination that the Default Judgment should be excepted from Debtors' discharge. Plaintiff later amended his adversary complaint to specifically assert that the debt was nondischargeable under subsections (a)(2)(A) and (a)(6) of 11 U.S.C. § 523 and to request the inclusion of $797.33 in costs and expenses he incurred in obtaining and attempting to collect the Default Judgment. Exhibit 9.

Plaintiff alleges that Debtors caused various types of damage to the Property during approximately the last nine months of their tenancy. Specifically, Plaintiff alleges that after Debtors vacated the Property, he discovered that dog urine had soaked through the carpet to the underlayment of the floors throughout the house and that a dog damaged the exterior back deck of the Property. Plaintiff also claims that Debtors put holes in walls and doors, damaged kitchen appliances, and tried to conceal some of the damage before they vacated the property.

## Analysis

Section 523(a) excepts from discharge a debt

"(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

\* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"

A creditor objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); Fed. R. Bankr. P. 4005. Exceptions to discharge are strictly construed against a creditor and liberally in favor of the debtor. In re Crouch, 199 B.R. 690, 691 (9th Cir. BAP 1996). For the reasons explained below, Plaintiff has not satisfied his burden of proof under either 11 U.S.C. § 523(a)(2)(A) or (a)(6).

As a threshold matter, the Default Judgment obtained by Plaintiff is not determinative of the ultimate issue presented in this adversary proceeding - whether the debt owed by Debtors is nondischargeable under § 523(a) of the Bankruptcy Code. At most, the Default Judgment

establishes the amount of the debt owed by Debtors for damage to the Property incurred during their tenancy.[1]

Issue preclusion, also known as collateral estoppel, applies in nondischargeability proceedings. Grogan, 498 U.S. at 284-85. The preclusive effect of a state court judgment in a subsequent federal action is determined by the law of the state in which the judgment was rendered. In re Nourbakhsh, 67 F.3d 798, 800 (9th Cir. 1995).

In Oregon, issue preclusion applies when one tribunal has decided an issue if (1) the issues in the two proceedings are identical; (2) the issue was actually litigated and essential to the decision on the merits in the earlier proceeding; (3) the party had a full and fair opportunity to be heard on the issue; (4) the party to be precluded is the same as or in privity with the party in the earlier proceeding; and (5) the earlier proceeding was the type of proceeding to which the court will give preclusive effect. Nelson v. Emerald People's Utility Dist., 318 Or. 99, 104, 862 P.2d 1293 (1993).

> "'The burden of proof is on the party seeking to assert collateral estoppel and in order to sustain this burden, 'a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.' [In re Kelly, 182 B.R. 255, 258 (9th Cir. BAP 1995]. 'Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the collateral estoppel effect.' Id."

In re King, 258 B.R. 786, 792 (Bankr. D. Mt. 2001)(quoting In re Baldwin, 245 B.R. 131, 134 (9th Cir. BAP 2000)).

In Oregon, issue preclusion applies to judgments taken by default, provided the matters were essential to the judgment. Gwynn v. Wilhelm, 226 Or. 606, 609, 360 P.2d 312 (1961). However, Plaintiff's Small Claims Complaint alleged only that Debtors owed him a specified sum for "damage to rental property." The Small Claims Complaint and resulting Default Judgment do not establish any of the elements of a claim under § 523(a)(2)(A) or (a)(6), because the Small Claims Complaint does not include any allegation of "false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A), or "willful and malicious injury." 11 U.S.C. § 523(a)(6). Therefore, the Small Claims Judgment does not establish that the debt is nondischargeable.

I will now explain why the evidence Plaintiff submitted at trial failed to establish that the debt owed by Debtors is nondischargeable under either of those provisions.

---

[1] There is "some question as to whether Oregon recognizes a Small Claims Court Judgment as one that can have preclusive effect." Pygott v. Metro Area Collection Service, Inc., 2012 WL 1566232 *3 (D. Or. 2012). For purposes of this ruling, I will assume, without deciding, that Oregon law gives preclusive effect to issues decided in small claims proceedings.

Craig J. Melton
James L. Moore
Laura L. Moore
April 1, 2015
Page 4

1. Section 523(a)(2)(A)

      Plaintiff alleged, and Debtors conceded in their answer,[2] that Plaintiff had a policy of not permitting pets. At trial, Plaintiff testified that he went to Debtors' door in January of 2013 and observed a dog at the Property. Plaintiff also testified that Mrs. Moore told him at that time that the dog belonged to her cousin and that it would be at the Property only over the weekend. The evidence is that, contrary to Mrs. Moore's statement, Debtors got the dog sometime in 2011. Exhibits 6 and 7. Plaintiff argues that the debt for property damage is nondischargeable under § 523(a)(2)(A) because Debtors employed false pretenses, made false representations, or engaged in actual fraud when Mrs. Moore told him in January of 2013 that the dog was not their dog.

      A creditor seeking to prove that a debt is nondischargeable under § 523(a)(2)(A) must prove

> (1) that the debtor made representations; (2) that at the time the debtor knew they were false; (3) that the debtor made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on the representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

In re Harmon, 250 F.3d 1240, 1246 (9th Cir. 2001); In re Eashai, 87 F.3d 1082 (9th Cir. 1996). Intent to defraud may be determined by looking at the totality of the circumstances. Eashai, 87 F.3d at 1088. "Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." In re Devers, 759 F.2d 751, 753-54 (9th Cir. 1985).

      There are two problems with Plaintiff's reliance on § 523(a)(2)(A), either one of which is fatal to his claim under that provision. First, Plaintiff has not met his burden of showing that he sustained any damage as a proximate result of Mrs. Moore's false representation. Debtors got the dog sometime in 2011. There is no evidence that the damage caused by the dog occurred after Mrs. Moore's alleged misstatement in January of 2013. In addition, although Plaintiff alleged in his complaint that he would have kicked Debtors out of the Property if he had known that the dog belonged to them, he did not offer any evidence in support of that allegation. Plaintiff did not testify that he would have evicted Debtors out for having a dog. Indeed, Mr. Moore testified that Debtors never tried to hide the dog and that Plaintiff knew they had a dog.

      Second, even if there was evidence establishing that Plaintiff sustained damage as a proximate result of Mrs. Moore's alleged false representation, and there is not, Plaintiff's § 523(a)(2)(A) claim still would fail because the allegations in this case do not support a § 523(a)(2)(A) claim. "For a debt to fall within this exception, money, property or services, or an extension, renewal or refinancing of credit must actually have been obtained by the false pretenses or representations or by means of actual fraud." 4 COLLIER ON BANKRUPTCY

---

[2] Debtors filed answers to both the original and amended complaints filed by Plaintiff in this adversary proceeding. For ease of reference, I will refer to both documents as Debtors' answer.

¶ 523.08[1][a](Alan N. Resnick & Henry J. Sommer eds. 16th ed.). Although a debtor's rights under a lease constitute property within the meaning of 11 U.S.C. § 523(a)(2), 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][b], if the property in question was obtained before the making of any false representation, later misrepresentations will not result in a nondischargeable debt. Id. at ¶ 523.08[1][d](citing, inter alia, Ruegsegger v. McCarley, 262 Or. 157, 165-66, 496 P.2d 214 (1972)). "[I]n order to constitute the obtaining of money or property by false pretenses or false representations within the meaning of the Bankruptcy Code, the fraud by such means must occur at or prior to the time the money or property is obtained." In re Beaver, 6 B.R. 523, 525 (Bankr. D. Or. 1980). Here, the misrepresentation occurred several years after Debtors obtained the Property as a result of entering into a lease with Plaintiff.

Case law from other jurisdictions supports this position. In In re Ennis, 512 B.R. 224 (Bankr. W.D. Mo. 2014), the court held that a debt for damage to rental property from an animal was nondischargeable under 11 U.S.C. § 523(a)(2)(A), but the factual differences between that case and this one illustrate the fundamental problem with Plaintiff's § 523(a)(2)(A) claim.

In Ennis,

"[a]t the time the Debtors submitted their Applications, the Debtors advised the [landlords], both verbally and in their written Applications, that they had one small Chihuahua dog. Despite their normal practice of not allowing pets at all in their rental homes, the [landlords] agreed to enter a lease with the Debtors and to allow the one small dog they had represented they had. Accordingly, on March 15, 2011, the Debtors and the [landlords] entered into a one-year lease, effective April 1, 2011, which, as relevant here, stated as follows:

> Pets: Lessor agrees to allow one small Chihuahua. Lessee agrees to have no other pets. Lessee agrees to be responsible for any and all damages and costs to repair property damaged by pet."

512 B.R. at 228 (footnotes omitted). The evidence in Ennis established that, contrary to their representation in the application, the debtors had at least one large dog that caused damage to the property. The court ultimately determined that the portion of the debt attributable to damage caused by that dog was nondischargeable.[3]

This case is not like Ennis. Here, Plaintiff does not allege that Debtors made any misrepresentation at the time they signed the rental agreement. Instead, the facts of this case are analogous to those in In re Booher, 284 B.R. 191 (Bankr. W.D. Pa. 2002), in which the court rejected a lessor's claim of nondischargeability under § 523(a)(2)(A). In Booher, an equipment lessor sought a determination that its claim against the lessee/debtor was nondischargeable under

---

[3] Another problem is that Plaintiff did not introduce any evidence apportioning the damages between those caused by the dog and those caused by other factors. Although Plaintiff testified that most of the damage to the Property was caused by the dog, I cannot determine what portion of Plaintiff's claim for damages is attributable to the dog.

§ 523(a)(2)(A) as a result of certain misrepresentations made by the debtor three days after the parties entered into the lease. The court held that the debt was not excepted from discharge under § 523(a)(2)(A) because the debtor obtained the leased property before making the misrepresentations. Booher, 284 B.R. at 200-01. For the reasons set forth above, Plaintiff has not met his burden of showing that the debt in question should be excepted from Debtors' discharge under 11 U.S.C. § 523(a)(2)(A).

2.  Section 523(a)(6).

11 U.S.C. § 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to . . . the property of another entity." To fall within the exception of § 523(a)(6), the injury must have been both willful and malicious. In re Su, 290 F.3d 1140, 1146-47 (9th Cir. 2002). A debt results from willful injury if the plaintiff shows that the debtor intended the injury itself, not just that the debtor intended to do the act that resulted in the injury. Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Conduct is willful "when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain." Su, 290 F.3d at 1144. In determining the debtor's state of mind, the court "may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." Id. at 1146 n.6. A malicious injury is "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." In re Jercich, 238 F.3d 1202, 1209 (9th Cir. 2001)(quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997)).

"[D]amage caused to a rental property, even if beyond that associated with normal wear and tear, does not automatically lead to a finding of nondischargeability under § 523(a)(6)." In re West, 446 B.R. 813, 817 (Bankr. N.D. Oh. 2010). In West, the damage caused during the debtor's tenancy included a broken toilet, a bathroom floor ruined due to urine and water damage, broken tile, removed trim and moldings, missing and damaged window blinds, and holes and other structural damage to walls and doors. The court in West rejected the landlord's nondischargeability claim under § 523(a)(6) despite finding that the debtors "acted with a large degree of disrespect" toward the landlord's property. The § 523(a)(6) exception to discharge does not encompass negligent, or even reckless, acts by a tenant that result in injury to the leased property. King, 258 B.R. at 795.

Plaintiff alleges that dog urine soaked through the carpet to the underlayment of the floors throughout the house and that the dog also damaged the exterior back deck of the Property. Plaintiff also claims that, when he retook possession of the Property, he discovered holes in walls and doors and damaged kitchen appliances. Plaintiff's assertion of the damage caused to the Property during Debtors' tenancy is supported by the evidence.[4] Thus, Plaintiff has proven the Debtors owe him a debt based upon the damage to the home. However, that does not mean that the debt is nondischargeable under § 523(a)(6).

---

[4] Although Mr. Moore testified that the dog did not urinate in the house and that only some of the damage to the deck was caused by the dog, Debtors do not dispute Plaintiff's other allegations of damage to the Property.

Plaintiff testified that most of the damage to the Property was caused by the dog. Although Debtors' possession of a dog during their tenancy violated their lease with Plaintiff, that does not equate to willful and malicious conduct. Even an intentional breach of contract does not give rise to a nondischargeable debt under § 523(a)(6) unless accompanied by willful and malicious conduct. Lockerby v. Sierra, 535 F.3d 1038, 1040-41 (9th Cir. 2008). Plaintiff did not offer any evidence that Debtors intentionally allowed the dog to urinate in the house or damage the exterior deck. A tenant's failure to properly clean and maintain rental property is generally considered to be included within the concept of negligence. In re McGuckin, 418 B.R. 251, 256 (Bankr. N.D. Oh. 2009)(debt dischargeable even though debtor seriously neglected duties and left property in an uninhabitable condition); King, 258 B.R. at 795-96. Even "deplorable housekeeping" in failing to properly monitor and clean up after pets does not give rise to a debt that is nondischargeable under § 523(a)(6) absent evidence of an intent to inflict injury on the landlord. In re Lazzara, 287 B.R. 714, 724 (Bankr. N.D. Il. 2002).

With regard to the other damage alleged by Plaintiff, Mr. Moore testified that some of the holes in the walls were caused when Debtors were moving furniture and removing items from the wall. Although he did not specifically testify as to the cause of all of the holes, the evidence is that Debtors have children and some of the damage is consistent with that commonly done by children. Mr. Moore testified that Debtors did not intentionally or maliciously damage Plaintiff's property. I had the opportunity to observe Mr. Moore's demeanor while testifying under oath and find him to be credible on that point.

Debtors tried to repair or minimize some of the damage to the walls and appliances. Mr. Moore testified that he tried his best but that he ran out of time to finish some of the repairs. Unsuccessful attempts to repair or improve rental property do not equate to willful and malicious injury. West, 446 B.R. at 818.

Plaintiff testified that approximately 75% of the time, Debtors were late paying their rent and that he started charging them a $45 late fee toward the end of their tenancy. According to Plaintiff, it was at that point that Debtors became hostile to him. Plaintiff suggests that Debtors deliberately damaged the Property out of spite after he began charging late fees. I conclude that the evidence does not warrant an inference that Debtors acted with the necessary intent to injure Plaintiff or his property.

There is no evidence that Plaintiff evicted Debtors. Instead, it appears that they vacated the Property voluntarily. It also appears that the damage to the Property allegedly caused by the dog, such as damage to the decking and the urine stains, likely occurred over a period of time rather than as a result of sudden acts of violence. Thus, this case is distinguishable from those in which a tenant is evicted and retaliates against the landlord by willfully and maliciously damaging the leased property.

The Plaintiff also asserted during trial that the Debtors had lied in their initial answer filed in this adversary proceeding by denying they owned the dog. Debtors later amended their answer and admitted to owning the dog. I am troubled by the Debtors' reversal, but the fact that

Craig J. Melton
James L. Moore
Laura L. Moore
April 1, 2015
Page 8

Debtors initially denied owning the dog is not relevant to the section 523 analysis. Although I do not condone Debtors' conduct with respect to the Property, after considering all the evidence, I am not persuaded that the damage to the Property arose from willful and malicious acts by Debtors as required by § 523(a)(6).

<u>Conclusion</u>

  For the reasons set forth above, I conclude that the debt owed by Debtors to Plaintiff is dischargeable. I will enter judgment for Debtors.

         Very truly yours,

         PETER C. MCKITTRICK
         Bankruptcy Judge